## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SHEIRYS BREDEMEIER,
    Plaintiff

v.

DENIS MCDONOUGH, Secretary, U.S.
Department of Veterans Affairs,
    Defendant

No. 21 CV 6216

Judge Jeremy C. Daniel

## MEMORANDUM OPINION AND ORDER

Plaintiff Sheirys Bredemeier, an employee of Edward Hines VA Health Care Center, filed this lawsuit against Defendant Denis McDonough in his official capacity as Secretary of the U.S. Department of Veterans Affairs (the "VA"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, as well as failure to accommodate, discrimination, and interference. The parties now cross move for partial summary judgment on certain of Bredemeier's claims. (R. 28; R. 40.) For the reasons that follow, the VA's motion for summary judgment is granted in part and denied in part, and Bredemeier's motion for summary judgment is denied in its entirety.

## BACKGROUND

The following facts are taken from the parties' Rule 56 submissions,[1] the materials cited therein, and all other aspects of the record in this case. All facts are genuinely undisputed unless otherwise noted.

Plaintiff Sheirys Bredemeier is a disabled individual who has been employed by the VA at Edward Hines VA Health Care Center ("Hines") in Hines, Illinois since 1999. (Pl.'s Resp. to Def.'s SOF ¶ 2; R. 46-2 ("Bredemeier Decl.") ¶ 1.) Bredemeier worked as a pharmacy technician at Hines until 2006, when she suffered permanent nerve damage while attempting to open a pharmacy window. (Def.'s Resp. to Pl.'s SOF ¶ 3; R. 30-1 ("Bredemeier Dep.") at 10:24–11:7.) After multiple surgeries, she was diagnosed with a variety of conditions that limit her range of motion as well as use of her neck, arms, and hands. (*See* Def.'s Resp. to Pl.'s SOF ¶ 1–3; Bredemeier Dep.at 12:6-13:15.) Bredemeier is unable to lift more than five pounds and has limited ability to type, write by hand, and grip objects. (Pl.'s Resp. to Def.'s SOF ¶ 6; Bredemeier Dep. at 6:22; 11:6-9; 104:13-17; R. 30-2 at 62.)

After she became disabled, the VA transitioned Bredemeier to an administrative support role in which her disability would not be an impediment. (*See*

---

[1] *See* Defendant's Local Rule 56.1 Statement of Facts ("Def.'s SOF") (R. 30); Plaintiff's Rule 56 Statement of Undisputed Material Facts ("Pl.'s SOF") (R. 42); Plaintiff's Objections and Responses to Defendant's Local Rule 56.1(a)(3) Statement of Material Facts ("Pl.'s Resp. to Def.'s SOF") (R. 46 at 1–13); Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("Pl.'s SOAF") (R. 46 at 13–23); Defendant's Response to Plaintiff's Statement of Additional Facts ("Def.'s Resp. to Pl.'s SOAF") (R. 54); Defendant's Response to Plaintiff's Rule 56 Statement of Undisputed Material Facts ("Def.'s Resp. to Pl.'s SOF") (R. 56); Defendant's Local Rule 56.1(b)(3)(C) Statement of Additional Fact ("Def.'s SOAF") (R. 57); Plaintiff's Response to Defendant's Statement of Additional Fact ("Pl.'s Resp. to Def.'s SOAF") (R. 64).

Def.'s Resp. to Pl.'s SOF ¶ 7.) Bredemeier requires a variety of accommodations to perform her job effectively, including dictation software, an ergonomic chair, an ergonomic keyboard, a "switcher" (*i.e.*, a device that allows a user to transition between speaking on the telephone and using dictation software), and a hydraulic arm. (Def.'s Resp. to Pl.'s SOAF ¶ 2).

In 2015, Bredemeier filed suit against the VA in this District, alleging harassment, failure to accommodate, and retaliation. *See Bredemeier v. Wilke*, 15 C 7514. The parties settled the case in 2018 after Judge Kennelly denied the defendant's motion for summary judgment, *see Bredemeier v. Wilkie*, No. 15 C 7514, 2018 WL 3707803, at *10 (N.D. Ill. Aug. 4, 2018), and the VA's Office of Employment Discrimination Complaint Adjudication ("OEDCA") issued a final agency decision finding that the VA had failed to reasonably accommodate Bredemeier. (*See* R. 42-4 ("2018 FAD"); R. 56-2 ("Settlement Agreement").)[2]

## I.  THE VA'S CONTINUED FAILURE TO ACCOMMODATE BREDEMEIER

Unfortunately, the settlement did not end the dispute between Bredemeier and her employer. In December of 2018, Bredemeier applied for and obtained her current position at the VA as a Program Support Assistant at Hines. (Bredemeier Decl. ¶ 42.)

---

[2] The Settlement Agreement contains provisions disclaiming liability and releasing present and future claims, except for claims that may arise after the agreement's effective date. (Settlement Agreement ¶¶ 5–7). Although the VA does not argue that any of the claims in this action are barred by the Settlement Agreement, it seeks to prevent the plaintiff from relying on the facts underlying the 2015 suit in moving for or opposing summary judgment. (Def.'s Resp. to Pl.'s SOF ¶¶ 7–35.) The Court agrees with the defendant that "one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle." *Wilmes v. United States Postal Serv.*, 810 F.2d 130, 132 (7th Cir. 1987). While the plaintiff's prior litigation is mentioned for the sake of background, the Court does not rely on the underlying facts in deciding the parties' motions for summary judgment.

3

In this capacity, Bredemeier is responsible for assisting with HR-related tasks such as hiring, recruitment, and promotions. (*Id.*) Bredemeier's new position required her to change offices, which meant that her assistive devices had to be transported to a different floor of the hospital. (*Id.* ¶¶ 43–44; Bredemeier Dep. at 55:22–25.)

Bredemeier was transferred to her new office in March of 2019. (Def.'s Resp. to Pl.'s SOF ¶¶ 37–38; Bredemeier Dep. at 30:14-17). When her assistive devices arrived about a month later, however, they were not in working condition. (Def.'s Resp. to Pl.'s SOF ¶ 39.) Bredemeier's ergonomic chair, keyboard and switcher were missing, and her hydraulic arm was broken. (*Id.*) Bredemeier requested replacement equipment, but the VA did not repair her hydraulic arm until 2020 and did not provide a functioning ergonomic keyboard until 2021. (*Id.* ¶ 41.) The agency never replaced her ergonomic chair or switcher, stating that ergonomic evaluations had determined that these accommodations were unnecessary. (*Id.* ¶¶ 43–44.) The VA provided Bredemeier with other accommodations to address her disability, however, including a private office, a parking space, and the opportunity to telework. (Pl.'s Resp. to Def.'s SOF ¶¶ 27, 28, 37.) Bredemeier contends that she is not able to effectively telework because she cannot access her assistive devices at home. (Bredemeier Decl. ¶¶ 100–103.)

Bredemeier also continued to have issues with her dictation software. (Def.'s Resp. to Pl.'s SOF ¶ 46.) She alleges that the software functioned for about five months after the 2018 final agency decision, but then was "non-functional more often than functional," resulting in frequent work stoppages. (*Id.* ¶ 46.) The VA disputes

4

this characterization, contending that the software has been largely functional since it was installed. (*See* R. 56-5 ("Martinez Decl.") ¶ 3.)

According to the VA, Bredemeier is running a local version of the software that must be frequently updated, with resulting delays. (*Id.* ¶ 4; R. 56-6 ("Westlund Decl").) Each time an issue with her software arises, Bredemeier must submit a ticket to the VA's IT team. (Pl.'s Resp. to Def.'s SOF ¶ 10; Bredemeier Decl. ¶ 52.) The VA contends that its IT team has promptly responded to each of Bredemeier's requests. (*See generally* Martinez Decl.) Bredemeier disputes this. (*See* Pl.'s SOAF ¶ 21.)

Shortly after the 2018 final agency decision, the VA offered Bredemeier an alternative, cloud-based dictation software called Dragon Medical One ("DMO"). (Def.'s SOAF ¶ 9; Westlund Decl. ¶ 3.) Because it does not require local updates, the VA represents that DMO would not cause the same technical issues as her current software. (*See generally* R. 54-4 ("Casiello Decl.").) Bredemeier refused DMO, however, citing an IT employee's statement that the software would not allow her to effectively perform secretarial work. (Westlund Decl. ¶ 3; Pl.'s Resp. to Def.'s SOAF ¶ 9.) Bredemeier maintains that the VA must hire a contractor to address the dictation software's frequent malfunctioning. (Bredemeier Dep. 114:23–115:1; *see generally* R. 47.)

## II.   ALLEGED FAILURE TO HIRE AND RETALIATION BY STEPHEN CAMPBELL

In March 2020, approximately one year after her transfer to the Program Support Assistant role, Bredemeier applied for another position as a Program Specialist in the Surgical Services Department at Hines. (Pl.'s Resp. to Def.'s SOF ¶ 21.) Bredemeier was not selected for the position, and she subsequently filed an

EEO charge alleging that Stephen Campbell, the supervisor of Surgical Services, intentionally ignored her application. (Bredemeier Decl. ¶¶ 62–67.) Bredemeier believes that Campbell rejected her application because of allegations that Bredemeier had made against one of his friends in her prior lawsuit.[3] (Pl.'s Resp. to Def.'s SOF ¶ 24.) The VA disputes this, asserting that Campbell was not involved in the selection process, applications were graded blindly, and hiring decisions were made by an independent panel. (*See generally*, Def.'s Resp. to Pl.'s SOAF ¶ 23.)

One of Bredemeier's friends, Shrise Blair, worked in the Surgical Services Department at the time that Bredemeier applied for the open position. (Def.'s Resp. to Pl.'s SOF ¶ 57.) Prior to filing her EEO charge against Campbell, Bredemeier would frequently visit Blair in her office and in the Surgical Services break room. (*See* Bredemeier Decl. ¶ 84.) While Bredemeier maintains that these visits were essential to her job, the VA contends that they were social visits outside the scope of her official responsibilities, and that Bredemeier was not required to visit Surgical Services to effectively perform her job. (Pl.'s Resp. to Def.'s SOAF ¶ 24; Westlund Decl. ¶ 6.)

One day in September 2020, while Bredemeier was eating lunch with Blair in the Surgical Services break room, Campbell approached Bredemeier and stated that she was not allowed to visit the department because she had filed a complaint against him. (Bredemeier Decl. ¶ 84.) He stated that he thought Bredemeier's presence in the department presented a conflict of interest and that she could not continue her daily

---

[3] Bredemeier's allegations against Campbell's friend, Cary Kolbe, are described more fully in Judge Kennelly's order denying the VA's motion for summary judgment. *See Bredemeier*, 2018 WL 3707803, at *3–4.

visits to Surgical Services until the matter was adjudicated. (Def.'s Resp. to Pl.'s SOF ¶ 62.) Bredemeier stated that Campbell's instructions were threatening and interfered with her ability to do her work. (Bredemeier Decl. ¶¶ 85–86.)

### III. OTHER HARASSMENT

Bredemeier also alleges that, following the 2018 settlement, she suffered harassment from other VA employees who made disparaging remarks about her disability and her history of litigation. (*See generally* Bredemeier Decl.; Bredemeier Dep.) Bredemeier alleges that she overheard Christine Mabrito, a former supervisor who was ordered to undergo training as part of the 2018 final agency decision, in the employee break room, telling other employees that Bredemeier "makes her sick" and that in order to deal with Bredemeier, "she needed to have a large cocktail, because she didn't want to deal with [Bredemeier] or [her] fucking lawyers." (Bredemeier Dep. at 31:16–21.) On another occasion, Bredemeier overheard Mabrito mocking another employee in the break room and stating, "I can't breathe." (*Id.* at 65:22–66:12.)

Bredemeier also alleges that other VA employees talked about her behind her back and excluded her from lunch. (Pl.'s Resp. to Def.'s SOF ¶ 15.) She alleges that she overheard several female VA employees referring to her as "cunt" and "roach" while talking to each other as they walked through the hallway outside of her office. (Bredemeier Dep. at 46:14–25.)

### IV. BREDEMEIER'S 2020 PERFORMANCE REVIEW, ADMINISTRATIVE PROCEEDINGS, AND THE INSTANT SUIT

Tensions between the VA and Bredemeier came to a head again in March of 2020 when Bredemeier's supervisor, Christopher Wirtjes, allegedly told her that she

would not receive the highest performance rating in an upcoming review. (*See* Pl.'s Resp. to Def.'s SOF ¶ 33.) Bredemeier objected, contending that Wirtjes was assessing her for tasks that exceeded the scope of her responsibilities. (*Id.* ¶ 32.) Bredemeier eventually received an "outstanding" performance rating—the highest rating available—for 2020. (*Id.* ¶ 33; R. 30-6.)

On March 27, 2020, Bredemeier filed a charge of employment discrimination with the EEO. (*See* R. 42-7.) The charge listed five counts: (1) failure to accommodate, (2) refusal to audit her position despite forcing her to perform duties above her grade, (3) downgrading of performance evaluation, (4) disparaging remarks about complainant and other disabled employee, and (5) disparaging references to the complainant's prior protected activity. (*Id.*; Def.'s SOF ¶ 26.) On May 15, 2020, Bredemeier filed a second EEO complaint adding allegations of (1) harassment/hostile work environment, (2) non-selection, and (3) failure to accommodate. (R. 42-8; Def.'s SOF ¶ 34.)

After filing her charges, Bredemeier sought to schedule a meeting with the Associate Director of Hines, Jon Beidelschies, to address her concerns. (Pl.'s SOAF ¶ 36.) Beidelschies allegedly told his assistant, Shirley Dixon, that he would not meet with Bredemeier alone because "he knew her to be a problem." (*Id.* ¶ 37.) Bredemeier was able to schedule a meeting with Beidelschies on May 27, 2020. (*Id.* ¶ 38.) When Wirtjes noticed the calendar entry for Bredemeier's meeting with Beidelschies, he allegedly told Dixon that Bredemeier was a "constant problem" and that he did not know what to do with her. (*Id.*)

8

The OEDCA investigated Bredemeier's claims and issued a final agency decision on November 17, 2021. (R. 42-11 ("2021 FAD").) The agency found that Bredemeier had failed to meet her burden of establishing disparate treatment or harassment, but that there was a preponderance of evidence suggesting that she was subjected to *per se* reprisal by Campbell. (*See id.*) The decision ordered the VA to provide EEO training to Campbell and to consider further discipline. (*See id.* at 9–14; Def.'s Resp. to Pl.'s SOF ¶¶ 66–67.) In December 2021, Hospital Director James Doelling chose to suspend Campbell for one day for violating the anti-retaliation provision of Title VII. (Pl.'s SOF ¶ 68; R. 42-12.) The compliance report stated that Campbell's statement had a "chilling effect" on Bredemeier's protected activity and that Campbell had "violate[d] the anti-retaliation provisions of Title VII." (R. 42-12 at 2.)

Bredemeier rejected the final agency decision and commenced this action in district court. (R. 1; *see* Pl.'s Resp. to Def.'s SOF ¶ 40.) Her complaint alleges retaliation in violation of Title VII and the Rehabilitation Act, (Count I), failure to accommodate (Count II), interference (Count III), and discrimination (Count IV). (R. 1.) The VA now moves for summary judgment on Counts II, III, and IV of the complaint (R. 28), and Bredemeier cross-moves on Counts I and II. (R. 40.)

## LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court draws all inferences in the light most favorable to the nonmoving party. *Id.* at 255. However, the nonmoving party cannot rely on mere conjecture or speculation to manufacture a genuine issue of material fact. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003).

## ANALYSIS

### I. RETALIATION

The Court begins by addressing Bredemeier's motion for summary judgment on her retaliation claim under Title VII and the Rehabilitation Act. This claim arises from Bredemeier's allegations against Campbell and the OEDCA's subsequent findings. (*See* R. 41 at 9–13.) "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). Bredemeier proceeds under the "direct method" which requires evidence that she (1) engaged in a statutorily protected activity; (2) her employer took an adverse action against her; and (3) there was a causal connection between the activity and the adverse action. *Fuller v. McDonough*, 84 F.4th 686, 690 (7th Cir. 2023) (holding that the standard for retaliation under Title VII and the Rehabilitation Act is the same); *Sitar v. Ind. Dep't. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003).

The parties do not dispute that Bredemeier's EEO complaint was protected activity. (R. 41; R. 58); *see also Tomanovich*, 457 F.3d at 663. Nor is there any genuine dispute concerning a causal connection between Bredemeier's complaint and Campbell's instruction to Bredemeier not to visit the Surgical Services department.

Campbell admitted that he issued the instruction because of Bredemeier's EEO charge, and that he believed her presence in the department was "a conflict of interest." (Def.'s Resp. to Pl.'s SOF ¶ 62; 2021 FAD at 2–3.) "When an employee's participation in statutorily protected activity is the determining factor in an employer's decision to take adverse employment action, that action is invalid regardless of the employer's intent." *E.E.O.C. v. Bd. of Governors of State Colls. & Univs.*, 957 F.2d 424, 428 (7th Cir. 1992).

The remaining question is whether Campbell's instruction rises to the level of a materially adverse employment action. This inquiry is "necessarily fact-specific." *Flanagan v. Off. of Chief Judge of Cir. Ct. of Cook Cnty., Ill.*, No. 06 C 1462, 2007 WL 2875726, at *8 (N.D. Ill. Sept. 28, 2007). In the retaliation context, "adverse employment actions" are not limited to those that affect the terms and conditions of one's employment. *Lewis v. City of Chi.*, 496 F.3d 645, 655 (7th Cir. 2007) (citation omitted). Instead, the "challenged action must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Id.* Title VII's anti-retaliation provision does not protect an employee against "trivial harms" such as "petty slights or minor annoyances that often take place at work and that all employees experience." *Lewis v. Wilkie*, 909 F.3d 858, 867–68 (7th Cir. 2018) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)). Instead, it "protects an individual . . . from retaliation that produces an injury or harm." *Id.*

Bredemeier points to the findings of fact issued in connection with the November 17, 2021 final agency decision as proof that Campbell's instruction not to visit Surgical Services was a materially adverse employment action. She cites statements made in the compliance report signed by Doelling that Campbell's actions had a "chilling effect" on Bredemeier's protected activity and that Campbell had "violate[d] the anti-retaliation provisions of Title VII." (R. 42-12 at 2.) Given the agency's apparent admission that it violated Title VII, Bredemeier contends that there is no genuine dispute of material fact that Campbell's instruction to Bredemeier constituted an adverse action.

In response, the VA argues that a reasonable jury could conclude—considering the context surrounding Campbell's statements—that the instruction did not rise to the level of materially adversity. (R. 58 at 9–12.) It points to the fact that Campbell was not Bredemeier's direct supervisor, and that Bredemeier's visits to the Surgical Services break room and Blair's office were not critical for her to perform her job function. (*See id.*) The VA argues that Campbell's actions were akin to "a mere snub" that is not actionable under Title VII or the Rehabilitation Act. (*Id.* at 11.)

As an initial matter, the Court need not defer to the OEDCA final agency decision in deciding the plaintiff's motion for summary judgment. Although records of administrative proceedings are admissible in employment discrimination cases, they must be reviewed *de novo. See Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976); *Smith v. Potter*, 445 F.3d 1000, 1011 (7th Cir. 2006) (a federal court is not "under any obligation to defer to the determination of an administrative agency in an

12

action which falls under Title VII of the Civil Rights Act of 1964"), *overruled on unrelated grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013). Moreover, the OEDCA's final agency decision appears to have applied a different standard than that for Title VII and Rehabilitation Act retaliation: the standard for *per se* reprisal under EEOC regulations. (*See* 2021 FAD at 6–8) "[S]uch '*per se* reprisals' are not violations of Title VII itself, but instead are violations of EEOC regulations that prohibit unlawful interference in the EEO process." *Redding v. Mattis*, 327 F. Supp. 3d 136, 146 (D.D.C. 2018), *aff'd sub nom. Redding v. Austin*, No. 21-5100, 2022 WL 625727 (D.C. Cir. Mar. 1, 2022). The 2021 final agency decision is therefore not binding as to whether Campbell's instructions constituted an adverse employment action.

Reviewing the record in its totality, the Court finds that a reasonable jury could conclude that Campbell's instruction did not rise to the level of a materially adverse action. Importantly, the parties dispute the level of control that Campbell exercised over Bredemeier, as well as whether Bredemeier was required to enter the Surgical Services department in order to perform her duties. These facts raise the possibility that Campbell's comments did not produce a concrete injury or harm. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012) (collecting cases and holding that being ostracized by a supervisor and being called a "trouble maker" was not behavior that constituted a materially adverse employment action).

Bredemeier argues that Doelling's statement in the compliance report constitutes an admission that the VA "violate[d] the anti-retaliation provisions of

13

Title VII." (R. 42-12 at 2.) This is so, she argues, because the OEDCA decision required only that the VA "consider taking" disciplinary action against Campbell. (2021 FAD at 14.) Because the VA apparently went above and beyond the OEDCA's base line recommendation, Bredemeier argues that the agency effectively conceded that Campbell violated Title VII.

Drawing all inferences in the VA's favor (as it must at this stage), the Court is not convinced that the compliance report is outcome-determinative. The report does not cite any controlling case law or statutory authority to explain its rationale as to why Campbell's actions violated Title VII. (*See* R. 42-12 at 2.) The fact that the compliance report was submitted in response to the OEDCA decision—which was based on EEO regulations rather than binding case law—raises the possibility that it was merely parroting the OEDCA's nonbinding conclusion regarding *per se* reprisal. Indeed, much of the language in the compliance report appears to have been copied verbatim from the final agency decision. (*Compare id.* at 2, *with* 2021 FAD at 7–8.) Given the possibility that the agency was admitting fault under a lesser standard, a reasonable jury could conclude that the report is not an admission that the agency violated Title VII.

This is not to dismiss out of hand the OEDCA's suggestion that Campbell's statement carried "the potential to ostracize Complainant from her colleagues, labeling her as a 'problem' employee." (2021 FAD at 8.) But Bredemeier cites no case law compelling the conclusion that she is entitled to summary judgment. (*See generally* R. 47.) Indeed, "it is not often that a plaintiff moves for or is granted

summary judgment on a Title VII retaliation claim." *E.E.O.C. v. Cognis Corp.*, 2012 WL 1893725 *3 (N.D. Ill. May 23, 2012). This case is not an exception to this rule. The question of whether Campbell's exclusion of Bredemeier was sufficiently adverse to dissuade a reasonable person from exercising her rights is subject to a disputed factual record, and is better answered by a jury. The Court therefore denies the plaintiff's motion for summary judgment on her Title VII and Rehabilitation Act retaliation claim.

## II.    FAILURE TO ACCOMMODATE

The Court next considers the parties' cross-motions for summary judgment on Bredemeier's failure to accommodate claim under the Rehabilitation Act (Count II). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency. . . ." 29 U.S.C. § 794(a). Employment discrimination claims under the Rehabilitation Act are governed by the same standards applicable to claims under Title I of the Americans with Disabilities Act ("ADA"). *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018).

To prevail, Bredemeier must show that: (1) she is a "qualified individual with a disability;" (2) the defendant was aware of her disability; and (3) the defendant failed to reasonably accommodate her disability. *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Cirs.*, 601 F.3d 674, 678 (7th Cir. 2010). The parties do not dispute that Bredemeier is a qualified individual with a disability, or that the

VA has been aware of her disability since at least 2006. (*See generally*, R. 29, R. 47.) Instead, they dispute whether the VA reasonably accommodated her.

"A 'reasonable accommodation' is one that allows the disabled to 'perform the essential functions of the employment position.'" *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) (citation omitted). "Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *Holzmueller*, 881 F.3d at 594. In the employment context, the duty of reasonable accommodation includes a requirement that the employer and employee engage in a "flexible interactive process" and make a good faith effort to determine what accommodation is necessary. *Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019). Ultimately, however, "[i]t is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000).

Bredemeier presents at least three theories to support her claim that the VA failed to accommodate her disability. First, she argues that the VA unreasonably delayed in repairing her hydraulic arm, replacing her ergonomic keyboard, and providing her with a parking space after she transitioned to the Program Support Assistant role. Next, she argues that that the VA failed to accommodate her by refusing to replace her ergonomic chair and switcher. Finally, Bredemeier argues that the VA failed to reasonably accommodate her by not providing effective dictation software. The Court addresses each theory in turn.

16

A.  **Unreasonable Delay in Repairing Hydraulic Arm, Providing Parking Space, and Replacing Ergonomic Keyboard**

The Court begins with the VA's argument that it did not unreasonably delay in repairing Bredemeier's hydraulic arm, replacing her ergonomic keyboard, or providing her with a parking space. "An unreasonable delay in providing an accommodation for an employee's known disability can amount to a failure to accommodate his disability that violates the Rehabilitation Act." *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020). To assess whether an alleged delay is reasonable, a court must review the totality of the circumstances, "including, but not limited to, such factors as the employer's good faith in attempting to accommodate the disability, the length of the delay, the reasons for the delay the nature, complexity, and burden of the accommodation requested, and whether the employer offered alternative accommodations." *Id.*

In support of its motion for summary judgment, the VA cites Seventh Circuit cases holding that delays in delivering requested accommodations of as long as twenty months are not unreasonable, provided that they are not a product of bad faith or indifference. *See Swain v. Wormuth*, 41 F.4th 892, 898 (7th Cir. 2022) (holding that a twenty-month delay in providing the plaintiff with accommodations did not violate the Rehabilitation Act); *Jay*, 233 F.3d at 1017 (same).

The Court is not persuaded that *Swain* and *Jay* are dispositive. Each of these cases involved a more fulsome record indicating the reasons for the employer's delay and the absence of bad faith. For example, in *Swain*, the defendants cited a lengthy process of paperwork submission, review, and scheduled installation that prevented

17

the accommodations from being implemented in a timely manner. *Swain*, 41 F.4th at 898. Likewise, in *Jay*, the defendant presented evidence that the plaintiff was considered for reassignment on a daily basis during a twenty-month period while awaiting reinstatement. *Jay*, 233 F.3d at 1017.

In this case, by contrast, the record is underdeveloped as to why delays occurred. While the VA replaced Bredemeier's hydraulic arm within twenty months and eventually honored her parking request, it presented little evidence explaining the process for providing the accommodations or why it took so long. Further, there is nothing in the record that explains the agency's two-year delay in replacing Bredemeier's ergonomic keyboard. Given the substantial nature of these delays, a reasonable jury could reach differing conclusions as to whether the VA unreasonably delayed in accommodating Bredemeier. Accordingly, the Court denies both parties' motions for summary judgment on this issue.

## B.    Failure to Replace Ergonomic Chair and Switcher

In addition to delaying in providing her with accommodations, Bredemeier presents evidence that the VA failed to replace Bredemeier's ergonomic chair or switcher, even though these accommodations had been provided previously pursuant to the OEDCA's 2018 final agency decision. (*See* Pl.'s SOF (citing 2018 FAD).)

Here, too, a disputed factual record prevents ruling in favor of either party. Although the VA cites an email thread as evidence that "ergonomic evaluations" had determined that the ergonomic chair and switcher were unnecessary, the emails in question were sent in 2023, two years after this lawsuit was initiated. (*See* R. 56-1.) Given the apparent absence of contemporaneous evidence that ergonomic evaluations

took place between 2018 (when Bredemeier transitioned to the Program Support Assistant position) and 2021 (when this lawsuit was filed), a jury could conclude that the agency's failure to provide or replace ergonomic equipment was unreasonable. The Court therefore declines to grant either party's motion for summary judgment on this issue.

### C. Effectiveness of Dictation Software

Finally, the Court considers the parties arguments concerning the effectiveness of Bredemeier's dictation software. Bredemeier argues that her dictation software frequently malfunctioned, leading to work stoppages. (Pl.'s SOF ¶ 46.) In response, the VA presents evidence that its employees promptly engaged with Bredemeier whenever she submitted IT ticket requests and successfully responded to technical difficulties. (*See, e.g.*, Martinez Decl.) Bredemeier disputes the VA's contention that relying on IT to resolve the persistent issues with her software was reasonable, given the frequency with which the software malfunctioned. She suggests that the VA must hire a contractor to resolve issues with the software or supply a different dictation software. (Bredemeier Dep. 114:23–115:1.)

Once again, disputed factual issues prevent granting summary judgment for either party. A reasonable jury could conclude that the VA's practice of requiring Bredemeier to submit IT tickets to address her software's functionality issues prevented Bredemeier from effectively performing her job. *Severson*, 872 F.3d at 481. Emails and IT ticket records presented by the VA establish that the VA responded to Bredemeier's requests (*see* R. 56-5 at 4–5), but they do not establish that Bredemeier was able to successfully use the software that she was provided. Indeed, in some

cases, the ticket requests show that the IT team's efforts failed to resolve the problem. (*See, e.g.*, *id.* at 4 ("I advised the end user she would need to contact the Dragon Medical Support desk for further assistance").)

In sum, while the VA represents that Bredemeier was able to effectively use her dictation software, her testimony to the contrary is sufficient to create a genuine issue of material fact. *See Bredemeier*, 2018 WL 3707803, at *7 (denying summary judgment on failure to accommodate claim on the ground that e-mails presented by the VA did "not demonstrate that Bredemeier [was] actually [] able to successfully use the [dictation] software" and that "a reasonable jury could believe her testimony on this point."). It is possible to infer that, given the sheer number of issues that arose with the software and the IT team's apparent failure to conclusively resolve them, that the VA failed to reasonably accommodate her.

As a fallback, the VA argues that it provided Bredemeier with an alternative (but equally reasonable) accommodation in the form of cloud based DMO software, but Bredemeier rejected it. (Def.'s SOAF ¶ 9.) Here too, however, a factual dispute regarding the effectiveness of DMO prevents ruling in the VA's favor. Bredemeier stated that she refused the DMO software because it does not effectively handle the secretarial tasks that she is required to perform. (Pl.'s Resp. to Def.'s SOAF ¶ 9.) In an email, Program Application Specialist Julie Casiello, corroborated this account, stating that "[Bredemeier's] tasks . . . are not very compatible with DMO. It would be more advantageous for her to use a program designed for administrative tasks. She was referred back to RA or IT to possibly find a more suitable option." (R. 64-1.)

Casiello's implication that DMO was not a "suitable option" for Bredemeier raises a factual question about whether it was actually a reasonable alternative.

Lastly, the VA argues that Bredemeier's preferred means of addressing the technical difficulties with her dictation software—hiring an outside contractor to ensure the dictation software's functionality—would impose an undue hardship on the agency. Once the plaintiff establishes the elements of a *prima facie* failure to accommodate claim, the burden shifts to the employer to provide evidence that the requested accommodation would impose an undue hardship.[4] *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 (7th Cir. 2013). Relevant factors include "the efficacy of a proposed accommodation and its effects on the employer's business operation" as well as "effects on other employees' workloads and schedules." *Equal Emp. Opportunity Comm'n v. Charter Commc'ns, LLC*, 75 F.4th 729, 740 (7th Cir. 2023).

The VA argues that giving access to an outside contractor would involve substantial data security risks or would otherwise be prohibitively costly since it would require the VA to modify its entire computer network. (*See* R. 58 at 7–8.) The problem with this argument is that it is unsupported by the record. The VA bears the burden of establishing an undue hardship, and it fails to cite any testimony or

---

[4] At various points in its briefing, the VA cites *Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 539 (1995), a case that suggests the plaintiff hears the initial burden in a disability discrimination action to show that the cost of a requested accommodation is not excessive in relation to the expected benefit. (*See* R. 29 at 7; R. 55 at 3–4.) The Supreme Court clarified in *US Airways v. Barnett* that a plaintiff's initial burden on summary judgment is not to precisely quantify costs, but to show that the requested accommodation seems reasonable "on its face, *i.e.*, ordinarily or in the run of cases." 535 U.S. 391, 400–02 (2002). Following *Barnett*, courts have not required plaintiffs to provide evidence of cost in order to meet their *prima facie* burden at summary judgment. *See, e.g.*, *Jankowski v. Dean Foods Co.*, No. 16 C 50103, 2019 WL 12528767, at *4 (N.D. Ill. Sept. 19, 2019).

evidence to substantiate its claims about security risks or prohibitive costs. (*See id.*) More than speculation is required to prevail at summary judgment. *McCoy*, 341 F.3d at 604. Additionally, Bredemeier presents evidence that, as recently as October 2023, the agency was exploring the possibility of hiring a contractor to address issues with the dictation software. (R. 64-1 at 8.) The emails do not indicate whether the agency reached a definitive conclusion as to the cost or feasibility of hiring a contractor. (*See id.*) The Court cannot conclude at this stage that adopting this accommodation would impose an undue hardship on the agency.

Given the conflicting evidence about the dictation software's functionality, a reasonable jury could conclude that the VA failed to provide Bredemeier with a reasonable accommodation. Alternatively, a reasonable jury could also conclude that the agency reasonably accommodated her by engaging in the interactive process and providing her with alternative accommodations like DMO. The Court therefore denies both parties' motions for summary judgment on this issue.

## III. INTERFERENCE

The Court next turns to the VA's motion for summary judgment on Bredemeier's interference claim (Count III). As with failure to accommodate, a claim for interference under the Rehabilitation Act "is established pursuant to the standards of the ADA." *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017). To establish interference, Bredemeier must show that: (1) she engaged in protected activity; (2) she exercised or enjoyed protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate. *Id.* Interference

requires "more than a quarrel among neighbors or an isolated act of discrimination"; instead, plaintiffs must demonstrate a "pattern of harassment, invidiously motivated." *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009).

The VA does not dispute that Bredemeier's filing of EEO charges against VA employees constitutes protected activity. *Frakes*, 872 F.3d at 550. The agency raises two arguments in support of its motion for summary judgment: (1) that Bredemeier failed to exhaust administrative remedies prior to bringing her interference claim, and that (2) there is insufficient evidence of a pattern of invidiously-motivated discrimination. The Court addresses each argument in turn.

### A. Exhaustion

To bring a lawsuit under the Rehabilitation Act, plaintiffs must first exhaust their administrative remedies by filing an EEO charge. *McHale v. McDonough*, 41 F.4th 866, 869 (7th Cir. 2022).[5] As a general matter, plaintiffs cannot bring claims in the lawsuit not in their original charge. *Id.* Even so, "if certain claims are not included in an EEOC charge, a plaintiff can still bring them if they are 'like or reasonably

---

[5] Seventh Circuit "case law has not been clear" as to whether a plaintiff is required to exhaust administrative remedies prior to filing suit under the Rehabilitation Act, but exhaustion is "likely a requirement." *Swain v. Wormuth*, 41 F.4th 892, 897 n.2 (7th Cir. 2022); *compare Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (observing that Rehabilitation Act plaintiffs "can seek relief pursuant to the procedures and requirements outlined in Title VII of the Civil Rights Act, which include exhausting administrative remedies prior to bringing suit."), *with Williams v. Milwaukee Health Servs., Inc.*, 732 F.3d 770, 770–71 (7th Cir. 2013) ("A seeker of relief under the Rehabilitation Act against a recipient of federal money is not required to exhaust the administrative remedies that the Act provides."). The Court assumes for the purposes of addressing the VA's motion that exhaustion is required. Even if it is not, the issue is immaterial to the resolution of the instant motion because, as indicated below, the Court concludes that Bredemeier has exhausted her administrative remedies.

related to the allegations of the [EEOC] charge and growing out of such allegations.'" *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011).

Bredemeier did not expressly include a claim for interference in either her March 2020 or May 2020 EEO charges, so the question is whether her interference claim is "like or reasonably related" to the claims included in those charges. In her opposition brief, Bredemeier clarifies that her interference claim is based on downgraded performance ratings and harassment by her supervisors, Wirtjes, Mabrito, and Beidelschies. (*See* Pl.'s SOAF ¶¶ 32–39.)[6]

For claims to qualify as "like or reasonably related" to an EEOC charge, they "must, at a minimum describe the same conduct and implicate the same individuals." *Moore*, 641 F.3d at 257. "This standard is a liberal one." *Teal v. Potter*, 559 F.3d 687, 692 (7th Cir. 2009). It is satisfied if there is (1) "a reasonable relationship between the allegations in the charge and those in the complaint," and (2) "the claim in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation." *Id.*

The Court concludes that Bredemeier's interference claim based on harassment by her supervisors in 2020 is like or reasonably related to the contents of her EEO charges. First, the interference claim describes the same conduct and

---

[6] Bredemeier does not indicate whether she is asserting an interference claim based on Campbell's exclusion of her from the Surgical Services Department. (R. 47 at 13.) To the extent that Bredemeier asserts such a claim, the Court concludes that the VA is entitled to summary judgment because (1) Bredemeier raised no argument in support of such a claim in response to the defendant's motion for summary judgment, *see, e.g.*, *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008), and (2) Bredemeier has failed to present evidence of discriminatory intent. *See Frakes*, 872 F.3d at 550.

implicates the same individuals as the charges. Bredemeier's March 27, 2020 EEO charge alleges that her "supervisors" "downgraded [her] performance evaluation" and "made disparaging remarks about complainant and another disabled employee." (R. 42-7.) Both charges identify "harassment" and "reprisal" as discriminatory conduct. (*Id.*; R. 42-8). At a high level, these allegations match up to Bredemeier's assertions that Wirtjes gave her a lower evaluation and Mabrito made harassing comments about her.

Viewing the charges liberally, a reasonable investigation could be expected to uncover the alleged interfering conduct. An investigation into "harassment" and "reprisal" on account of Bredemeier's disability could reasonably be expected to undercover Mabrito's alleged statements, and an investigation into allegations that a supervisor "downgraded [her] performance evaluation" could reasonably be expected to uncover the alleged downgrade of her performance in 2020. Because the claims are like or reasonably related to the claims in the EEOC charge, the Court concludes that Bredemeier has properly exhausted administrative remedies as to her interference claim.

## B. Merits

The Court now considers the merits of Bredemeier's interference claim. Again, to survive summary judgment, Bredemeier must present competent evidence of a "pattern of harassment, invidiously motivated." *Bloch*, 587 F.3d at 783. This requires "more than a quarrel among neighbors or an isolated act of discrimination." *Id.* The Court agrees with the VA that Bredemeier has failed to produce sufficient evidence

25

of a pattern of invidiously motivated harassment on account of her protected activity to survive summary judgment.

First, Bredemeier's claim that Wirtjes downgraded her performance evaluation in 2020 is contradicted by the evaluation itself, which indicates that Bredemeier received the highest score of "outstanding" in 2020. (Def.'s SOF ¶ 33.) Indeed, Bredemeier concedes that her performance rating was not downgraded. (Bredemeier Decl. ¶ 95.) Bredemeier also represents for the first time that her interference claim is based on her 2021 and 2022 year-end reviews, in which Wirtjes allegedly downgraded her performance rating from "outstanding" to "fully satisfactory." (Bredemeier Decl. ¶¶ 96–98; Bredemeier Dep. at 63:18.) But these allegations did not appear in Bredemeier's complaint, which was filed in 2021 and never amended. While a district court retains discretion to treat claims presented for the first time in summary judgment briefing as a constructive motion to amend, "[i]t will rarely be appropriate to do so." *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023). The Court declines to consider Bredemeier's allegations as a request for leave to amend her complaint, given that she does not discuss these allegations specifically in her briefing, offers no explanation as to how they could be considered timely without amending her complaint, and does not clarify how claims arising from these incidents in 2021 and 2022 would be timely exhausted by her 2020 EEO charges.

Bredemeier also points to Beidelschies and Wirtjes' alleged statements to Shirley Dixon that Bredemeier was "a problem" as a basis for her interference claim.

(Pl.'s SOF ¶ 37.) The record indicates that these statements were made outside of Bredemeier's presence in the context of responding to her harassment allegations and scheduling an in person meeting to address her concerns. There is no evidence that the statements were made with an intent to discriminate. At best, the statements indicate frustration with Bredemeier; they do not show an intent to interfere with her protected activity.

That leaves disparaging statements allegedly made by Mabrito. (*See* Bredemeier Decl. ¶¶ 104–109.) While Bredemeier testified that Mabrito "would regularly make comments about [her] lawsuit," the only comment that is described in any detail is Mabrito's comment to a group of employees in the break room that Bredemeier "made her sick" and that she had to drink to deal with Bredemeier. (*Id.* ¶ 106.) This comment is insufficient on its own to constitute a pattern of invidiously motivated harassment. The statement, which Mabrito denied making, was not made in Bredemeier's presence and does not clearly reference her protected activity. (*See* R. 30-2 at 118.) It is unclear whether the statement was made before or after Bredemeier filed her EEO charges. Even if inappropriate, a single disputed comment is simply too thin of a basis upon which to infer a pattern of invidious harassment. The Court therefore grants the VA's motion for summary judgment on Bredemeier's interference claim.

## IV. DISCRIMINATION

Finally, the Court considers the VA's motion for summary judgment on Bredemeier's disability discrimination claim (Count IV). The agency argues that it is

entitled to summary judgment on this claim because Bredemeier did not suffer an adverse employment action or a hostile work environment. (*See* R. 29 at 12–14.)

To prevail on a discrimination claim under the Rehabilitation Act, Bredemeier must show that: (1) she is disabled, (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) she suffered an adverse job action "solely by reason of . . . [her] disability." 29 U.S.C. § 794(a); *see* also *Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568 (7th Cir. 2016). Again, since there is no dispute that Bredemeier is disabled or otherwise qualified to perform her job, the only dispute is whether she suffered an adverse employment action.

An employment action must be "'materially' adverse to be actionable." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001). Such actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013). A hostile work environment, or a pattern of harassment, can also constitute an adverse employment action. *See Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 851 (7th Cir. 2019) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'") (quotation omitted).

The VA is entitled to summary judgment on this claim for the simple reason that Bredemeier failed to respond to the arguments raised in its motion for summary

judgment. A plaintiff who fails to respond to an argument raised on summary judgment waives her counterarguments and abandons her claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (deeming claims not clearly delineated in response to a motion for summary judgment abandoned).

Even if Bredemeier had not abandoned her discrimination claim, however, the VA would still prevail because the record does not contain sufficient evidence of disability-based discrimination. First, the evidence does not show an adverse employment action. Contrary to her allegations, Bredemeier did not receive a downgraded performance evaluation from Wirtjes in 2020. Nor has Bredemeier provided sufficient evidence that Campbell denied her a promotional opportunity on the basis of her disability. Documentary evidence as well as testimony submitted by the VA indicate that Campbell was not involved in the selection process for the position in Surgical Services. (*See* R. 30-2 at 109–113). Bredemeier's sole support for her claim that Campbell interfered with her selection is an inadmissible hearsay statement allegedly made by Blair. (*See* Pl.'s SOAF ¶ 25 ("Blair told Bredemeier that she was ranked as one of the best qualified on the certificate, but Campbell changed the scoring template used by the resume ranking panel, and scored Bredemeier himself.").) "A party may not rely on inadmissible hearsay to avoid summary judgment." *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656

(7th Cir. 2011). Bredemeier fails to point to any admissible evidence sufficient to create a genuine dispute of material fact on this issue.

Nor does the evidence indicate that Bredemeier suffered a hostile work environment on account of her disability. This requires evidence of conduct "sufficiently severe or pervasive to alter the conditions of employment." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017) (citation omitted). Relevant factors include "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Id.*

The record indicates, at most, that isolated, offensive comments were made about Bredemeier behind her back. While the comments were certainly deplorable, they were not made directly to Bredemeier, were not accompanied by any physical threats, and were not obviously related to her disability. *See id.* Bredemeier does not explain how these comments interfered with her ability to work. Accordingly, the Court grants the VA's motion for summary judgment on Bredemeier's discrimination claim.

## CONCLUSION

For the foregoing reasons, the Court grants the defendant's motion for summary judgment [28] in part and denies it in part and denies the plaintiff's motion for summary judgment [40] in its entirety. Judgment is entered for the defendant on Counts III and IV of the complaint. On or before March 29, 2024, the parties shall submit a joint status report with proposed trial dates.

Date: 3/11/2024

JEREMY C. DANIEL
United States District Judge